Colin E. Kaufman (CK4916)
Jeffrey R. Metz (JM1022)
ADAM LEITMAN BAILEY, P.C.
Attorneys for Defendant
120 Broadway, 17th Floor
New York, NY  10271
(212) 825-0365

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

AGRIPPA, LLC                                    Case No. 10-cv-09478-PAC
                                                ECF Case
               Plaintiff,

       - against -

BANK OF AMERICA, N.A.,

               Defendant.

-----------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

                                                                                                                                                                              **Page**

I.     INTRODUCTION .................................................................................................... 1

II.    FACTS ...................................................................................................................... 2

III.   INJUNCTION STANDARDS .................................................................................. 6

IV.   ARGUMENT ............................................................................................................ 6

        A.     AGRIPPA IS NOT LIKELY TO SUCCEED ON THE MERITS ....................... 6

               1.    Klein Failed To Pay In Accordance With The Wyoming Guaranty .......... 7

               2.    Cross-Default Clauses And Cross-Collateralization Clauses Are
                     Different ..................................................................................................... 10

               3.    The Agrippa Note Is Also In Default As A Consequence Of
                     Klein's Insolvency. .................................................................................... 11

               4.    Klein's Failure To Provide BOA Current Financial Statements And
                     Access To The Connecticut Property For An Appraisal Upon
                     Demand Again Renders The Agrippa Loan In Default. ........................... 12

        B.     THE BALANCE OF HARMS IS NOT TIPPED IN AGRIPPA'S FAVOR ....... 13

               1.    Injunctive Relief Is Not Warranted Because Agrippa Has An
                     Adequate Remedy At Law ........................................................................ 13

               2.    New York's Public Policy Favors Expedient Disposition Of
                     Collateral Secured By Contract ................................................................ 14

V.    CONCLUSION ....................................................................................................... 14

Defendant, Bank of America, N.A. ("BOA"), respectfully submits this memorandum of law in opposition to plaintiff's motion for preliminary injunction dated December 20, 2010 (the "*Motion*"). Plaintiff has virtually conceded that the loan at issue in this case is in default. Its efforts to forestall BOA's collection efforts are not, therefore, likely to succeed (nor can plaintiff show the existence of sufficiently serious questions going to the merits), all as necessary to justify the granting of an injunction. Accordingly, the *Motion* should be denied.

## I.   INTRODUCTION

Agrippa, LLC ("Agrippa") is a New York limited liability company and Samuel Klein ("Klein") is its sole member. BOA is the holder of a $3.2 million loan made to Agrippa, which Klein personally guaranteed. The Agrippa loan documents contain a "cross-default" clause establishing that, if Agrippa or Klein fail to perform under any ***other*** loan agreement, then the loan to Agrippa will also be considered to be in default. In addition, Klein's insolvency is an independent event of default under the Agrippa loan documents.

Klein also guaranteed a $1.35 million loan made to PLC Partners, LLC ("PLC"), another limited liability company of which Klein is again the sole member. After PLC and Klein defaulted on that loan and, following BOA's demand for payment, PLC sued BOA in Wyoming claiming – just as Agrippa has done here – that the loan to PLC was actually ***not*** in default.[1] And, just as here, PLC sought an injunction to stop BOA's pending foreclosure. Following trial, and after Klein ***admitted*** that he couldn't pay the PLC loan, the United States District Court for the District of Wyoming entered judgment in BOA's favor.

---

[1] See *PLC Partners, LLC v. Bank of America, N. A.*, United States District Court, District of Wyoming, Docket No. 10-CV-0141-D (hereinafter, the "Wyoming Action"). This Court can take judicial notice of pleadings on file before a sister district. *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006).

HFD 218154.4

Given PLC's default and Klein's coincident failure to pay BOA in accordance with his guaranty of the PLC loan, BOA here respectfully submits that, pursuant to the Agrippa loan's cross-default clause, the Agrippa loan is now also in breach.  Additionally, Klein's inability to timely satisfy his guaranty of the PLC loan, along with (among other things) his admission in the Wyoming Action that he lacked the "wherewithal" to do so, evidence Klein's insolvency, and that insolvency constitutes a separate event of default under the Agrippa loan documents.

While Agrippa labors to characterize these breaches as mere "technicalities" (a characterization that BOA disputes), the issue is ultimately irrelevant because BOA's intended sale of its collateral is fully in consonance with its contractual and statutory rights.  Agrippa is thus not likely to prevail at trial and, in any event, it has an adequate remedy at law.

**II.   FACTS**

The facts of this case are simple and straightforward.  Klein guaranteed two loans held by BOA.  *See Declaration of Andrew Maidman* ("*Maidman Dec.*"), December 24, 2010 (attached as Exhibit A), ¶¶ 6, 8.[2]  The first loan was made to Agrippa, a limited liability company, of which Klein is the sole member (the "Agrippa Loan").  *Id.*, ¶ 4; *see also* Wyoming Action, *Transcript of Hearing* ("*Tr.*"), November 5, 2010 (attached as Exhibit D), p. 62.  That loan is evidenced by a $3,200,000.00 note (the "*Agrippa Note*"), which note is secured by a personal property security interest encumbering Agrippa's shares in a New York City cooperative apartment (the

---

[2]  BOA also holds a $5.8 million loan personally made by Klein (the "Klein Personal Loan") and secured by a mortgage on his Greenwich home (the "Connecticut Property").  The Klein Personal Loan is not in litigation, and has not been declared in default.  Copies of Klein's note, as well as his mortgage (the "*Klein Mortgage*"), are attached as Exhibits B and C, respectively.

HFD 218154.4

"Collateral").[3]  *Maidman Dec.*, ¶¶ 4-5.  Klein personally guaranteed the Agrippa Loan (the "*Agrippa Guaranty*").[4]  *Id.*, ¶ 6.

The *Agrippa Note's* default clause (the "Default Clause"), provides, in part, as follows:

> **DEFAULT.**  I will be in default under this Note if any of the following happen:
>
> \*   \*   \*
>
> **Break Other Promises.**  I break any promise made to [BOA] or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with [BOA].
>
> \*   \*   \*
>
> **Death or Insolvency.**  Any Borrower dissolves . . . or any of the members becomes insolvent . . . .
>
> \*   \*   \*
>
> **Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness . . . .

*See Agrippa Note* (Exhibit E), pp. 1-2 (bolding in original).

Klein also guaranteed a loan made to PLC, another limited liability company of which Klein is again the sole member (the "PLC Loan").  *Maidman Dec.*, ¶¶ 7-8; *see also Tr.*, p. 62.  The PLC Loan was evidenced by a $1,350,000.00 note (the "*Wyoming Note*"), and secured by a mortgage on Wyoming real estate (the "*Wyoming Mortgage*").[5]  *Maidman Dec.*, ¶ 7.

---

[3] The *Agrippa Note* and the related security agreement (the "*Agrippa Security Agreement*") are attached as Exhibits E and F, respectively.

[4] The *Agrippa Guaranty* is attached as Exhibit G.

[5] Copies of the *Wyoming Note* and *Wyoming Mortgage*, as well as Klein's guaranty thereof (the "*Wyoming Guaranty*"), are attached hereto as Exhibits H, I and J, respectively.

HFD 218154.4

PLC defaulted on the *Wyoming Note*. *See* Wyoming Action, *Order*, November 12, 2010 (the "*Order*"), p. 7, ¶ 17 (discussion of Klein's trial testimony and his "acknowledge[ment] . . . before this Court that PLC failed to pay the [Wyoming] Note," as well as Klein's "acknowledgement that he was in default on the PLC Loan"); *see also id.*, *Judgment In A Civil Case* (the "*Judgment*"), November 12, 2010.[6] Accordingly, on June 4, 2010, BOA notified Klein and PLC that the PLC Loan was in default, that the same had been accelerated in accordance with its terms, and that demand was being made upon PLC and Klein for payment in accordance with their respective obligations. *Maidman Dec.*, ¶ 10.[7] Additionally, and based on the cross-default provisions of the Default Clause, BOA, in separate correspondence, also notified Klein and Agrippa that the Agrippa Loan was likewise being declared in default, that the debt represented thereby was being accelerated, and that demand was being made upon Klein and Agrippa for payment pursuant to the *Agrippa Guaranty* and the *Agrippa Note*, respectively. *Id.*, ¶ 23.[8]

PLC and Klein failed to respond to BOA's payment demands and, on June 22, 2010, BOA notified PLC and Klein of its intent to foreclose the *Wyoming Mortgage*. *Order*, p. 3, ¶ 6. Agrippa and Klein also failed to respond to BOA's payment demands and, on June 23, 2010, BOA sued Klein in Connecticut seeking to enforce its rights under the *Agrippa Guaranty*. *See Bank of America, N.A. v. Samuel Klein*, United States District Court for the District of Connecticut, Docket No. 10-cv-987 (MRK) (hereinafter the "Connecticut Action").[9]

---

[6] The *Order* and the *Judgment* are attached hereto as Exhibits K and L, respectively.

[7] The notification letter is attached hereto as Exhibit M.

[8] The notification letter is attached hereto as Exhibit N.

[9] As discussed above, the Court can take judicial notice of the Connecticut Action's docket. *See* footnote 1, *supra*.

In response to BOA's notice of intent to foreclose, PLC sued BOA in Wyoming on July 6, 2010, and filed a motion for an *ex parte* temporary restraining order to stop BOA's planned foreclosure. *Order*, p. 3, ¶ 7. That motion was denied and PLC undertook no further efforts to enjoin the foreclosure of the *Wyoming Mortgage*, which foreclosure occurred on August 10, 2010. *Id.*, p. 3, ¶¶ 6-7. Following the foreclosure sale, PLC filed a preliminary injunction motion to prevent BOA from accepting a sheriff's foreclosure deed. *Order*, p. 1. The gravamen of PLC's claims was that BOA supposedly had told PLC that it didn't have to make payments with respect to the PLC Loan while the parties were discussing settlement. *Id.*, p. 4, ¶ 9. PLC thus claimed (much as Agrippa does here) that the PLC Loan was ***not*** in default and that BOA had improperly foreclosed the *Wyoming Mortgage*. *Id.*

The Wyoming federal court conducted a hearing on PLC's preliminary injunction motion on November 5, 2010 and, pursuant to *Fed. R. Civ. P.* 65 (a) (2), consolidated the injunction hearing with a trial on the merits. *See Order*, generally. The Wyoming court explicitly found – indeed, Klein **admitted** – that the PLC Loan had not been paid in accordance with its terms.[10] *Order*, p. 7, ¶ 17. Accordingly, the Wyoming court expressly held that PLC had defaulted on the PLC Loan and it entered final judgment in BOA's favor.[11] *See Judgment*.

Based on the fact that the PLC Loan has been judicially determined to be in default, and given Klein's obvious failure to pay that loan in accordance with the *Wyoming Guaranty* (which failure, along with certain other events as discussed below, also evidences Klein's insolvency),

---

[10] The Wyoming court also characterized Klein's testimony as "inconsistent" and found that "Mr. Klein was not a credible witness." *Order*, p. 6, ¶ 15.

[11] PLC's appeal of the *Order* and the *Judgment* is pending. *Memo.*, p. 3. The existence of the appeal is irrelevant to this proceeding, however, since the law recognizes that, even though an appeal is pending, the *Judgment* remains entitled to preclusive effect. *Antonious v. Muhammad*, 873 F. Supp. 817, 824 (S.D.N.Y. 1995) ("Under New York law . . . the mere pendency of an appeal does not deprive a challenged judgment of its *res judicata* effects."); *accord Exchange Nat. Bank of Chicago v. Ferridge Properties of New York, Inc.*, 112 A.D.2d 33, 34, 490 N.Y.S.2d 656, 657 (N.Y. App. Div. 1985).

BOA has moved for summary judgment in the Connecticut Action. *See* Connecticut Action, Docket Entry No. 29. BOA has likewise undertaken to foreclose upon the Collateral in accordance with the terms of the *Agrippa Security Agreement*. *See Agrippa Security Agreement*, p. 3, ¶ 9. In particular, on December 2, 2010, BOA published notice of its intention to sell the Collateral on January 5, 2011.[12] Plaintiff, of course, here seeks to enjoin that sale.

### III. INJUNCTION STANDARDS

A preliminary injunction is an extraordinary and drastic remedy not routinely granted by courts in this Circuit. *Monserrate v. New York State Senate*, 599 F.3d 148, 154 (2d Cir. 2010). A party seeking such relief must establish irreparable injury and either (1) a likelihood of success on the merits, or (2) at least sufficiently serious questions going to the merits to make them a fair ground for litigation, as well as a balance of hardships tilting decidedly towards the movant. *Metropolitan Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152, 156 (2d Cir. 2010) (citations and quotations omitted). Agrippa fails by either measure.

### IV. ARGUMENT

#### A. AGRIPPA IS NOT LIKELY TO SUCCEED ON THE MERITS.

It is beyond peradventure that PLC defaulted on the *Wyoming Note*; indeed, that fact has been judicially established in the Wyoming Action. Nor is there any question that, despite being called upon to do so, Klein failed to perform in accordance with the terms of the *Wyoming Guaranty*. *See Maidman Dec.*, ¶ 15. Thus, the only issue is whether Klein's failure to pay BOA in accordance with the terms of the *Wyoming Guaranty* is of any consequence here, given Klein's concurrent role as a guarantor of the Agrippa Loan.

---

[12] The notice is attached hereto as Exhibit O.

For its part, BOA submits that the Agrippa Loan's default provisions are clear and unambiguous and must, therefore, be enforced. Agrippa, however, asserts that the Default Clause does ***not*** apply, and that BOA's collection efforts represent an unlawful effort by BOA to utilize the Collateral in order to satisfy the PLC Loan. *See* Complaint, December 20, 2010, p. 5, ¶ 19. As discussed below, Agrippa's conflation of the concepts of cross-defaulting and cross-collateralization is both legally and factually unsupportable. The Default Provision is clear, the Agrippa Loan is in default, and BOA has every right to proceed with the sale of the Collateral.

      1.    **<u>Klein Failed To Pay In Accordance With The *Wyoming Guaranty*.</u>**

An extended discussion of the *Agrippa Note's* Default Clause is simply not needed. The clause plainly provides that, if Agrippa or, by virtue of his guarantor status, Klein, "fail to perform promptly at the time and strictly in the manner provided . . . ***in any other agreement or loan [they] have with BOA***," BOA may then lawfully declare the *Agrippa Note* in default. *See Agrippa Note*, pp. 1-2 (emphasis added)

Cross-default clauses are hardly novel. *See, e.g., Doctor's Assocs., Inc. v. Jabush*, 89 F.3d 109, 113 (2d Cir. 1996) (noting existence of cross-default clause in franchise agreement as related to sublease, and observing, "[t]hus, by its plain terms, a breach of the franchise agreement constitutes a breach of the sublease."); *cf. Intelligent Digital Sys., LLC v. Visual Mgmt. Sys., Inc.*, 2010 WL 3463350, at *2 (E.D.N.Y. Aug. 30, 2010) (attached as <u>Exhibit P</u>) (discussing generally the effect of a cross-default clause). To the contrary, they are a mainstay of the banking industry, and reflect the simple fact that when a common borrower (or guarantor) experiences problems with one loan, a domino-effect is likely to occur. *See Maidman Dec.*, ¶ 21. In the event of an initial default, and assuming that the relevant loan documents so provide, the affected lending institution has a legitimate interest in acting to preserve all of its collateral on all of the loans associated with that common borrower (or guarantor) and, as appropriate, to move against its

borrower/guarantor before its/his condition further deteriorates. *See id.*, ¶ 18; *cf. New Maine Nat'l Bank v. Liberty*, 778 F. Supp. 86, 90 (D. Me. 1991) (enforcing cross-default clause and allowing borrower's $2.3 million note to be declared in default because of, *inter alia*, guarantors' default under an unrelated $18,750 note).

Here, and as the Court determined in the Wyoming Action, PLC failed to timely pay the PLC Loan.[13] Klein likewise failed to satisfy the *Wyoming Guaranty*.[14] The Default Clause – which explicitly provides that Klein's failure to perform pursuant to his "other agreement" with BOA, *i.e.* the *Wyoming Guaranty*, constitutes a default under the *Agrippa Note* – thus compels the conclusion that the Agrippa Loan is now also in default.

Agrippa's response is that the default relied upon by BOA is, at most, "technical" in nature because it is premised upon a breach "of an entirely different guaranty, of a different loan, to a different borrower, on a different property, in a different State [*sic*], executed nine months after the" Agrippa Loan. *Plaintiff's Memorandum of Law in Support of Motion for Temporary*

---

[13] "It is well established that federal law on collateral estoppel applies to determine the preclusive effect of a prior federal judgment." *Purdy v. Zeldes*, 337 F.3d 253, 258 fn. 5 (2d Cir. 2003).

> Under federal law, collateral estoppel applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits."

*Id.* at 258, quoting *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (internal quotations and footnote omitted).

Whether PLC was or was not in default with respect to the PLC Loan was not just *an* issue in the *Wyoming Action*, it was *the* issue. Complaint, p. 4-5, ¶ 18.

[14] Pursuant to the *Wyoming Guaranty*, Klein "unconditionally guaranteed[d] full and punctual payment and satisfaction of the Indebtedness of [PLC] to [BOA], and the performance and discharge of [PLC's] obligations under the [Wyoming] Note and the Related Documents." *See Wyoming Guaranty*, pp. 1, 3 (establishing that the "Related Documents" include the *Wyoming Mortgage*). Klein thus breached that guaranty when, following PLC's default with respect to the *Wyoming Note*, he failed to promptly pay the PLC Loan.

- 8 -

*Restraining Order and Preliminary Injunction* ("*Memo.*"), December 2 0, 2010, p. 6. This assertion is, however, flawed in at least two respects.

First, BOA and Agrippa were free to contract in any way they saw fit, and it is thus of no moment that BOA has relied upon a breach of a "different" guaranty on a "different" loan to invoke the clear provisions of the Default Clause. *120 Greenwich Dev. Assocs., LLC v. Reliance Ins. Co.*, 2004 WL 1277998, at *11 (S.D.N.Y. Jun. 8, 2004) (attached as Exhibit Q) ("where the language is clear, '[t]he policy favoring freedom of contract requires that, within broad limits, the agreement of the parties should be honored even though forfeiture results.'"), quoting *Oppenheimer & Co. v. Oppenhein, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691 (N.Y. 1995).

Second, and as the *Maidman Dec.* makes clear, there is a valid reason behind cross-default clauses which makes it clear that they are anything but mere "technicalities." When, as here, a common guarantor of one obligation is unable to fulfill his responsibilities to a lender, it is legitimate to conclude that he will – either then or in the future – likely be incapable of performing his ***other*** promises in connection with other loans. *Maidman Dec.* ¶ 16. In such a case, the lender has a legitimate interest in acting to immediately protect ***all*** of its loans before other creditors of the borrower begin clamoring for satisfaction of their own claims, or before the debtor's financial position further deteriorates. *Id.*, ¶ 18.

Here, while Agrippa and PLC are, respectively, makers of the *Agrippa Note* and the *Wyoming Note*, the reality is that remittances on the Agrippa Loan and the PLC Loan have previously been made from Mr. Klein's <u>personal</u> checking account. *Id.*, ¶ 9.[15] Thus, Klein's candid admission to the Wyoming court that he did not have the "wherewithal" to satisfy the PLC Loan was a red flag that he would likely be incapable of performing under the Agrippa

---

[15] Indeed, Agrippa Loan payments have actually been made by another entirely different entity – Fairchild Properties Ltd. – that is not a party to or guarantor of either the Agrippa Loan or PLC Loan. *Id.*

- 9 -

Loan, particularly given the fact that Klein had previously made payments on the Agrippa Loan and PLC Loan from his personal funds. *Id.*, ¶ 17. Klein's status as a common guarantor of both the PLC Loan and the Agrippa Loan compels the conclusion that BOA's invocation of the Default Clause was, notwithstanding Agrippa's "technicality" claims, defensible both as a matter of legal right *and* as a matter of sound banking judgment.

### 2. Cross-Default Clauses And Cross-Collateralization Clauses Are Different.

Agrippa also claims that BOA is "trying to treat the Collateral as security for the Wyoming loan" in violation of the terms of the *Agrippa Security Agreement*. Memo., p. 6. But this assertion simply confuses the difference between a cross-default clause and a cross-collateralization provision.

Cross-default provisions enable a bank to declare one loan in default because of the breach of an entirely different loan. *See New Maine Nat'l Bank*, 778 F. Supp. at 90; *Maidman Dec.*, ¶ 21. Cross-collateralization provisions, on the other hand, mean that security pledged for one loan can also stand as security for an entirely different debt. *See, e.g., In re Tower Air, Inc.*, 397 F.3d 191, 194 fn. 3, 199-200 (3d Cir. 2005); *Maidman Dec.*, ¶ 22. These two clauses thus plainly accomplish different results.

BOA is under no illusion that, whatever proceeds may be generated by the sale of the Collateral, those proceeds will be applied to the debt of Agrippa, and Agrippa *alone*, in connection with the Agrippa Loan. *Maidman Dec.*, ¶ 27. Those realized sums will, precisely *because* the Agrippa Loan documents do *not* contain a cross-collateralization clause, not be used to in any way reduce any indebtedness of PLC, *see id.*, ¶ 27, and Agrippa has pointed to no facts that suggest that BOA has ever intended to proceed in any fashion other than as stated herein. Agrippa's efforts to conflate the two clauses thus simply has no merit.

HFD 218154.4

### 3.   The *Agrippa Note* Is Also In Default As A Consequence Of Klein's Insolvency.[16]

The Default Clause also provides that the *Agrippa Note* will be in default "if any of the members of [Agrippa] become insolvent." *Agrippa Note*, p. 2. Under New York Law,[17] a person is deemed insolvent when, *inter alia*, they have "ceased to pay [their] debts in the ordinary course of business or cannot pay his debts as they become due." *N.Y. U.C.C. Law* § 1-201 (23) (McKinney 2001).[18]

As Klein himself candidly acknowledged in the Wyoming Action, he failed to perform under the *Wyoming Guaranty* because he "didn't have the wherewithal." *Tr.*, pp. 41-42. PLC (and, as guarantor, Klein) also failed to pay the property taxes for the real estate secured by the *Wyoming Mortgage*. Connecticut Action, *26 (f) Report*, p. 4, ¶¶ 10-11 (attached hereto as Exhibit S). Klein's insolvency is further evidenced by the fact that Klein has yet to satisfy a judgment in excess of $13 million entered against him personally in July 2010 in an action styled *PLC Partners, LLC, et al. v. Choice Hotels Int'l, Inc.*, Circuit Court for Montgomery County, Maryland, Case No. 308969-V ("Maryland Action"). *See* Maryland Action, Order, July 2010, attached hereto as Exhibit T.[19] The evidence manifestly establishes that Klein has failed to pay his debts – to BOA, with respect to property taxes, and pursuant to the judgment entered in the Maryland Action – as they became due. As a consequence, a member of Agrippa – indeed its

---

[16] Agrippa argues – without the benefit of authority – that BOA is precluded from asserting any default on the *Agrippa Note* other than Klein's failure to pay the *Wyoming Guaranty*. *Memo.*, p. 6. But BOA's notification letter to Agrippa and Klein expressly reserved BOA's right to exercise "any and all rights and remedies [BOA] may have under the [Agrippa] Loan Documents." (Ex. N). Thus, BOA is entitled to assert its rights pursuant to any and all of Agrippa's defaults under the *Agrippa Note*. *See Daiwa Special Asset Corp. v. Desnick*, 2002 WL 1997922, at *5 (S.D.N.Y. Aug. 29, 2002) (attached as Exhibit R), citing *Primetime 24 Joint Venture v. DirecTV, Inc.*, 2000 WL 426396, at *9 (S.D.N.Y. Apr. 20, 2000).

[17] The *Agrippa Note* contains a New York choice of law provision. *Id.*, p. 2.

[18] In New York, insolvency may also be determined under federal bankruptcy law. *N.Y. U.C.C. Law* § 1-201 (23).

[19] Here again, the Court may take judicial notice of the Maryland Action. *See* footnote 1.

HFD 218154.4

*only* member – is insolvent and, pursuant to the Default Clause, the *Agrippa Note* is again in breach. On the basis of the foregoing, Agrippa is not likely to succeed on the merits and, therefore, is not entitled to injunctive relief.

4. **Klein's Failure To Provide BOA Current Financial Statements And Access To The Connecticut Property For An Appraisal Upon Demand Again Renders The Agrippa Loan In Default.[20]**

The *Klein Mortgage* expressly entitles BOA to receive Klein's current financial statement once a year upon request if BOA, in its sole discretion, determines that, *inter alia*, "an adverse change has occurred in the financial condition of [Klein]." *Id.*, Custom Mortgage Rider, ¶ 3. The Custom Mortgage Rider also entitles BOA to appraise the Connecticut Property once a year if BOA, in its sole discretion, determines that, *inter alia*, "an adverse change has occurred in real estate market conditions in the area where the Property is located . . . or [ ] the financial condition of [Klein]."

In the past year, BOA requested that Mr. Klein provide his current financial statement and access to the Connecticut Property for appraisal purposes on numerous occasions because it determined that an adverse change occurred in both Klein's financial condition as well as the local real estate market. *See Maidman Dec.*, ¶ 30. For example, on February 9, 2010, BOA requested that Mr. Klein submit his current financial statement and provide BOA's appraiser access to the Connecticut Property in accordance with the *Klein Mortgage*. *Correspondence from D.Frechette to J.Okun*, dated February 9, 2010 (attached as <u>Exhibit U</u>). Mr. Klein, through counsel, refused BOA's request. *Correspondence from J.Okun to D.Frechette*, dated February 10, 2010 (attached as <u>Exhibit V</u>). On September 20, 2010, BOA again requested Klein's current financial statement and access to the Connecticut Property for purposes of an appraisal. *Correspondence from D.Frechette to A.Nevas*, dated September 20, 2010 (attached as <u>Exhibit</u>

---

[20] *See* footnote 16, *supra*.

W). Klein still has not acquiesced. *Maidman Dec.*, ¶ 32. Klein's steadfast failure to comply with BOA's requests for his current financial statement and access to the Connecticut Property for appraisal purposes is, by virtue of the Default Clause's cross-default provisions, again a breach of the *Agrippa Note*.

### B. THE BALANCE OF HARMS IS NOT TIPPED IN AGRIPPA'S FAVOR.

#### 1. Injunctive Relief Is Not Warranted Because Agrippa Has An Adequate Remedy At Law.

In the matter at bar, the collateral secured by the *Agrippa Security Agreement* is *Agrippa's* interest in a cooperative apartment in Manhattan, not an interest in Klein's homestead. Mr. Klein lives in Greenwich, Connecticut. *Tr.*, p. 18. At ground, therefore, the Collateral appears to have been secured by Agrippa for investment and its primary value is economic in nature.

Aside from conclusorily alleging that it will "lose the right to use and possess its unique real property," *Memo.*, p. 9, Agrippa completely fails to explain either the irreparable injury that will allegedly result from the sale of the Collateral or the supposed reason why monetary damages are inadequate. As a preliminary matter, Agrippa misapprehends the nature of the Collateral, which is personalty, *i.e.* not real property. *Saada v. Master Apts. Inc.*, 579 N.Y.S.2d 536, 538 (N.Y. Sup. 1991), citing *Matter of State Tax Commission v. Shor*, 400 N.Y.S.2d 805 (1977) ("The shares constituting ownership of a cooperative apartment and a proprietary lease, are chattel real or personalty, not realty."); *accord In re Pollack*, 795 N.Y.S.2d 296, 298 (N.Y. App. Div. 2005). Further, Agrippa's inability to delineate any reasons why the loss of its shares of a cooperative apartment cannot be redressed monetarily is telling. Because Agrippa's supposed (and unexplained) injuries can be redressed monetarily, Agrippa has failed to make a showing of irreparable harm that tips the balance of hardships in its favor. *See Lezell v.*

*Forde*, 26 Misc.3d 435, 447 (N.Y. Sup. Ct. 2009) (denying injunctive relief where plaintiffs failed to demonstrate the lack of an adequate remedy at law if defendant wrongfully sold shares in cooperative apartment); *see also Saada*, 579 N.Y.S.2d at 539 ("A preliminary injunction is not to be utilized if the claimed wrong is fully compensable by money damages.").

### 2. New York's Public Policy Favors Expedient Disposition Of Collateral Secured By Contract.

The harm to BOA, on the other hand, is demonstrable and concrete. Agrippa wants to prevent BOA from realizing upon its bargained for contractual rights, namely the ability to liquidate the Collateral. At the same time, though, there is no assurance that Agrippa will even make payments to BOA. Agrippa's injunctive request thus amounts to little more than an effort by it to realign the entire economic structure of this transaction by compelling BOA to "hold" the Collateral without the corresponding benefit of performance by Agrippa, which is contrary to New York law and public policy.[21] *See N.Y. U.C.C.* § 9-610; *see also id.*, § 9-601 cmt. 2 ("The rights of a secured party to enforce its security interest in collateral after the debtor's default are an important feature of a secured transaction."); *accord Fundex Capital Corp. v. Reichard*, 568 N.Y.S.2d 794, 795 (N.Y. App. Div. 1991).

## V. CONCLUSION

The *Motion's* linchpin is that the *Agrippa Note* is not in default.. However, it is beyond cavil – indeed, it has been judicially determined – that PLC breached the *Wyoming Note* and, despite being called upon to do so, that Klein failed to remedy that default thereby breaching the *Wyoming Guaranty*. Pursuant to the cross-default provisions of the Default Clause, that failure gave rise to a breach of the *Agrippa Note*. In addition, Klein's breach of the *Wyoming Guaranty*,

---

[21] While BOA certainly does not believe that an injunction is warranted in this case, this Court should, if it grants the instant motion, compel Agrippa to post security to pay BOA's potential costs and damages, including the re-advertisement costs of a new sale and related expenses. *Fed. R. Civ. P.* 65 (c).

HFD 218154.4

coupled with his failure to pay taxes on the Wyoming real estate and his liability pursuant to the Maryland Action, is *prima facie* evidence of his insolvency, which insolvency also constitutes a default under the *Agrippa Note*. Finally, Klein has, in violation of the *Klein Mortgage*, continuously denied BOA access to pertinent information to which it is entitled, again thereby breaching the *Agrippa Note* pursuant to its cross-default provisions. For all these reasons, the premise of the *Motion* – that there was no default under the *Agrippa Note* – fails. Finally, Agrippa fails to demonstrate that it will suffer irreparable harm if the Collateral is sold in accordance with the *Agrippa Security Agreement*.

Accordingly, and for all of the reasons aforesaid, defendant, Bank of America, N.A., respectfully submits that Agrippa's motion for a preliminary injunction should be denied.

Dated:     December 29, 2010
           New York, NY

                              Respectfully submitted,

                              DEFENDANT,
                              BANK OF AMERICA, N.A.

                              By: _____
                              Colin E. Kaufman (CK4916)
                              Jeffrey R. Metz (JM1022)
                              ADAM LEITMAN BAILEY, P.C.
                              Attorneys for Defendant
                              120 Broadway, 17th Floor
                              New York, NY  10271
                              (212) 825-0365
                              cekaufman@alblawfirm.com
                              jmetz@alblawfirm.com

- 15 -

HFD 218154.4