UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
:
AGRIPPA, LLC,                                          :
:
                     Plaintiff,                       :
:
    -against-                                         :
:
BANK OF AMERICA, N.A.,                                 :
:
                     Defendant.                       :
-------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 11, 2011

10 Civ. 9478 (PAC)

<u>ORDER</u>

HONORABLE PAUL A. CROTTY, United States District Judge:

      Plaintiff Agrippa, LLC ("Agrippa") commenced this action against Defendant Bank of America, N.A. ("BOA") in New York Supreme Court on December 20, 2010. Agrippa seeks a declaration that it is not in "default under the Note and other loan documents" between itself and BOA (Comp. ¶ 32); as well as a preliminary and permanent injunction enjoining BOA from conducting an auction of the collateral securing the note. (Comp. ¶ 33).

      The promissory note at issue is in the amount of $3.2 million and is secured by collateral consisting of all right, title and interest in a proprietary lease for, and shares in, a cooperative apartment located at 445 Lafayette Street in Manhattan. BOA has declared Agrippa in default of the promissory note and scheduled a public auction of the collateral for the loan on January 5, 2011. Agrippa maintains that it is current on all payments due on its note; and that the default, which BOA claims, is based on a guaranty of a different loan, entirely unrelated to Agrippa which is not a default under the Agrippa loan documents.

      Agrippa obtained an Order to Show Cause on December 21, 2010 which set the preliminary injunction for a hearing on January 3, 2011. BOA removed the action to Federal Court but this Court adopted the schedule in the State Order to Show Cause. On January 3, 2011,

both parties appeared and agreed that there were no factual disputes so that a fact hearing was unnecessary. The Court has considered the briefs the parties submitted and the oral argument of January 3, 2011. BOA agreed at the end of oral argument that it would adjourn the auction scheduled for January 5, 2011 "pending the Court's timely resolution to the motion." (Prelim. Inj. Hr'g Tr. 51:10-11, Jan. 3, 2011).

**The Agrippa Loan of May 23, 2006**

On May 23, 2006, Agrippa borrowed $3.2 million from United States Trust Co., N.A.[1] Agrippa signed a promissory note in that amount. Samuel Klein, who is the sole member of Agrippa, signed a guarantee promising the full, prompt and punctual payment of all liabilities in connection with the Agrippa loan. The parties also entered into a second agreement which provided security in collateral (i.e., the right, title and interest in shares of stock and a proprietary lease on Apartment 12-A at 445 Lafayette) to secure Agrippa's repayment of the $3.2 million note.

Within a year, Mr. Klein entered into another transaction to finance the purchase of real property in Jackson, Wyoming. Agrippa describes this transaction as a "different loan to a different borrower for a different property in the State of Wyoming, executed nine months after Agrippa's note was executed." (Pl.'s Mem. 3). But the transaction was not in another galaxy far, far away as Agrippa suggests. It involved another entity, P.L.C., which was an LLC, whose member was the same Samuel Klein who was the guarantor in the Agrippa loan.

---

[1] U.S. Trust Co., N.A. was acquired by BOA. BOA is the successor in interest and Agrippa does not challenge BOA's right to enforce its note and other loan documents.

### The P.L.C. Loan of February 26, 2007

On February 26, 2007, P.L.C. Partners borrowed $1,350,000 and signed a note in that amount. The note was secured by a mortgage encumbering 2480 North Harvest Drive (also known as Lot 54, Spring Creek Ranch Subdivision), Jackson, Wyoming. Samuel Klein also guaranteed the full, prompt and punctual payments of all liabilities owed to the lender.

### Legal Proceedings Involving P.L. C. in Wyoming

On June 4, 2010, BOA formally notified P.L.C. and Klein that the P.L.C. loan was in default. BOA accelerated the loan and demanded full payment. When payment was not forthcoming, BOA notified P.L.C. and Klein that it intended to foreclose. P.L.C. challenged the foreclosure and sought a restraining order, ex parte, in Wyoming State Court, to enjoin foreclosure. The motion was denied on July 7, 2010 and BOA removed the action to U.S. District Court for the District of Wyoming.

The foreclosure sale on the Jackson, Wyoming property was concluded on August 10, 2010. There were no bidders and BOA was the recipient of the Sheriff's Certificate of Purchase for the foreclosed property. P.L.C. sought an injunction against any further alienation of the Jackson property to third parties, as well as trying to preserve, if possible, the redemption period that Mr. Klein and P.L.C. have according to law. The matter came on before Chief Judge William F. Downes, who conducted a hearing on November 5, 2010 (Def.'s Mem. in Opp. to Mot. Prelim. Inj. Ex. D, at 7 (Wyo. Proceeding Tr., Nov. 5, 2010) ("Wyo. Tr.")).

Mr. Klein testified at the hearing, maintaining that he had an agreement with BOA to renegotiate the loan, and while those discussions continued, he was not required to make payments. Chief Judge Downes found (i) this claim was wholly unsupported by the record; (ii) that Mr. Klein's testimony was inconsistent; and (iii) "Mr. Klein was not a credible witness."

(Def.'s Mem. in Opp. to Mot. Prelim. Inj. Ex. K (Ch. Judge Downes' Order Denying Mot. Prelim. Inj., Nov. 12, 2010) ("Nov. 12, 2010 Order")).

Chief Judge Downes denied the preliminary injunction and then granted BOA's motion, pursuant to Fed. R. Civ. P. 65(a), and consolidated the preliminary injunction hearing with the trial on the merits. He noted that "Plaintiff failed to adduce any credible evidence supporting its position with respect to any of those issues at the preliminary injunction hearing . . . [B]ecause Plaintiff's own testimony[2] undercut any right to relief, the Court sees no justification for delaying addressing this matter on its merits." (Nov. 12, 2010 Order ¶ 26). Thereafter, Chief Judge Downes entered judgment in favor of Bank of America.

This decision is devastating to Plaintiff's position that Mr. Klein, the guarantor of the P.L.C. loan, was not in default. The U.S. District Court held that Mr. Klein had defaulted. When the Chief Judge asked why Mr. Klein did not pay off the loan, Mr. Klein admitted that he "did not have the wherewithal." (Wyo. Tr. 41; Nov. 12, 2010 Order, at 6 n.2). Plaintiff's counsel attempts to gloss over the District Court's judgment and order by the bland assertion that the decision is on appeal; but the plain fact is that the decision is no less binding on Mr. Klein by virtue of the appeal.

### The June 4, 2010 Agrippa Default Letter

When P.L.C. and Mr. Klein defaulted on the Wyoming loan, BOA maintained that this constituted a default under the Agrippa loan documents. On June 4, 2010, BOA wrote to both Agrippa and Mr. Klein at 20 East 46th Street, and to Mr. Klein at his residence in Connecticut. The letter referred specifically to the note, which provides in pertinent part:

> The terms of the New York Note provide as follows:
>
> Default. I will be in default if any of the following happens:

---

[2] Mr. Klein was the only witness for the plaintiff, P.L.C.

> Break Other Promises. I break any promise made to [Bank] or fail to perform promptly at the time and strictly in the manner provided in this note or in any agreement related to this note or in any other agreement or loan I have with [Bank].
>
> Events Affecting Guarantor. Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness . . . .

The June 4, 2010 Notice then advised of a default on the P.L.C. loan by reason of the Guarantor's failure to promptly satisfy his financial obligations. That default constituted a default on the Agrippa loan documents as well. Accordingly, the BOA accelerated the loan and demanded immediate payment in full, in the amount of $3,113,686.41

**Proceedings subsequent to Judgment Entered by the U.S. District Court in Wyoming**

After BOA obtained the Wyoming Judgment in their favor on November 12, 2010, it subsequently served Notice of Sale of 375 shares of Astor Place Associates and all right, title and interest and to the proprietary lease for Apartment 12-A at 445 Lafayette Street. The auction was noticed for January 5, 2011 to satisfy a debt in the amount of $3,130,391.01. (Def.'s Mem. in Opp. to Mot. Prelim. Inj. Ex. O).

**Standards for Preliminary Injunction**

Preliminary injunctions issued, pursuant to Fed. R. Civ. P. 65, are an extraordinary remedy and should be granted only where the party seeking relief satisfies stringent pre-conditions. See, e.g., Monserrate v. N.Y.S. Senate, 599 F.3d 148, 154 (2d Cir. 2010). First, the party seeking preliminary injunction must establish that there is irreparable injury. See, e.g., Lynch v. City of N.Y., 589 F.3d 94, 98 (2d Cir.2009). Plaintiff assumes that because the security involves a cooperative apartment, that Agrippa is entitled to an injunction. The argument might have more punch if the apartment was Mr. Klein's primary residence, but it is not. Indeed, Mr. Klein's affidavit concerning the apartment is silent on the apartment's use. The apartment may be held for

5

investment. Mr. Klein's primary residence is in Connecticut. Further, Agrippa is an LLC and it is difficult to discern any real harm to such an entity by being deprived of its lease. Finally, Plaintiff submits no proof, in the form of affidavit or otherwise, of specific harm it will suffer. Plaintiff's assertion of irreparable injury is nothing more than an ipse dixit. Plaintiff bears the burden of demonstrating irreparable injury. Even if Mr. Klein claims to have used Apartment 12-A (which he does not), it is not his primary residence and loss of pied-a-terre is not irreparable. While it is true that Agrippa will lose its right to the property if there is a foreclosure, mere loss of investment on a defaulted loan does not make the injury irreparable.

But even if the injury were irreparable, Agrippa would also have to show that it either (1) is likely to succeed on the merits or (2) raises substantial, serious questions going to the merits with a balance of hardships tilting sharply in favor of the movant. See, e.g., id. Agrippa fails both tests.

**Plaintiff's Arguments in Support of Preliminary Injunction**

Plaintiff makes two arguments: First, even while conceding there was a default on the Wyoming loan transaction and a breach of guaranty by Mr. Klein (see Arg. Tr. 7 [default], 16 [guaranty], Jan. 3, 2011), it argues that those judicial determinations do not mean there is a default on the Agrippa loan. Agrippa maintains that it is one month ahead on its loan payments (i.e., it is current through January 31, 2011 on loan payments), and BOA for purposes of this argument stipulates that the Agrippa loan is current. (Arg. Tr. 47).

Second, Plaintiff argues that BOA started a proceeding in U.S. District Court for the District of Connecticut to declare Mr. Klein in default of his guaranty obligations of the Agrippa loan by reasons of his default on the P.L.C. land transaction in Wyoming. Since that action is first filed, Agrippa argues that BOA must await its outcome before it can proceed against the collateral.

6

**Analysis**

The note at issue here provides for a cross-default on which a default occurs when the Borrower breaks any promise made to the bank with regard to "any other agreement or loan I have with [Bank]."

Plaintiff's argument that BOA is foreclosing on the Agrippa property to satisfy the P.L.C. judgment is rejected. First of all, it confuses or conflates cross-collateralization with cross-default. Second, while prominently featured in Plaintiff's brief, counsel did not mention the argument at all at the January 3, 2011 hearing. Finally, BOA concedes that any proceeds from the Agrippa foreclosure must be used exclusively to satisfy the Agrippa loan (and related expenses). The question is whether the guarantor's default on the Wyoming transaction—a judicially established fact which Plaintiff now concedes—constitutes an event of default on the Agrippa loan transaction.

Agrippa's argument is that it made no promises to BOA other than in connection with its own note. That argument cannot succeed; it directly contradicts the note's language which makes it a default to break a promise in "any other agreement" with the Bank. Further, the note does not stop with the cross-default; it continues so that the notes' promises are made the guarantor's promises as well. (Def.'s Mem. in Opp. to Mot. Prelim. Inj. Ex. E, at 2 ("Any of the preceding events occurs with respect to any Guarantor of any of the indebtedness . . . .")).

At argument, Plaintiff's counsel argued that this position would lead to absurd results. For example, if Mr. Klein had defaulted on a $100 credit card bill, the bank would not be able to foreclose on the loan. But BOA submits that it is entitled not only to the performance of the repayment obligations under the loan, but all obligations. These obligations commonly include, for example, payment of real estate taxes and insurance, submission of appropriate and timely

financial statements, maintaining the premises in good order, and maintaining financial integrity. BOA is entitled to performance on both the hypothetical $100 credit card bill and the guaranty on the notes. Moreover, we are not dealing with a credit card bill; BOA is entitled to performance of all obligations in the note where Mr. Klein has admitted he does not have the "wherewithal" to keep current on a $1.3 million debt and the Circuit Court for Montgomery County, Maryland has found that he owes $13,589,155.84 based on his guarantee of six separate notes.

Accordingly, the Court finds that Plaintiff is not likely to succeed on the merits since Plaintiff is not likely to establish that the guarantor's default and the breach of guaranty in Wyoming is not an event of default under the Agrippa note. Nor has Agrippa raised a substantial question on the merits with the balance of hardships tipping in its favor.

With respect to the Connecticut action, Plaintiff argues that because it was first filed, BOA should be forced to await the outcome of that proceeding before proceeding here. The doctrine which Plaintiff advocates is based, at least in part, on notions of judicial economy and efficiency. But, even if the Connecticut District Court were to find that Mr. Klein's default and breach of guaranty in Wyoming were a breach of the Agrippa loan agreement, the Court could award only money damages. That relief would be quite hollow in light of Mr. Klein's admission that he lacked the "wherewithal" to pay a much smaller debt he had guaranteed in Wyoming, and he has yet to pay the six notes for $13 million he guaranteed which were the subject of the Maryland action. The District Court in Connecticut has no jurisdiction over the shares and proprietary lease in the apartment in Manhattan. Other than Plaintiff's wishing it were so, there is no good reason to force BOA to wait or restrain its efforts to foreclose until the Connecticut Court reaches its decision.

BOA may proceed against both the guarantor, as it has in Connecticut; and against the collateral, as it has here in New York. It chose not to proceed against the collateral until it had a judicial determination that there was a default and a breach of guarantee in Wyoming. As soon as it had that judicial decision, the question was a simple one: Was the Wyoming default a default under the Agrippa loan agreement? (See Arg. Tr. 31:1, 31:22-32, 38:16-25). Plaintiff has failed to establish that the answer to that question is negative.

One final point; Plaintiff's counsel argues that if BOA (or its predecessor) wanted to provide that a default on a subsequent agreement would also be a default on the Agrippa agreement, it should have said so in the subsequent agreement.[3] But the issue cannot be determined by speculating on what might have been; the Court must resolve this issue by examining the language which the bank, the borrower and the guarantor agreed to. Here, the parties to the loan agreements provided that it would be an event of default if a promise made "in any other agreement or loan I have with [Bank]" was broken. And that promise was applicable to both the borrower, Agrippa, and to the guarantor, Mr. Klein. This is not a surprise. Mr. Klein signed the Promissory Note on Agrippa's behalf: "By Sam Klein, Managing Member by Judy J. Berland as attorney in fact." The guaranty was signed by Sam Klein. And the guaranty provided that at its election, BOA could proceed either against Agrippa or the guarantor, or both. Proceeding against one does not preclude proceeding against the other.

The Court finds that Agrippa has not shown irreparable injury. Further, the Court finds that Agrippa has shown neither a substantial likelihood of success on the merits, nor has Agrippa raised a substantial question with the balance of equities tipping in its favor.

---

[3] Of course, if BOA could have said this in a later agreement, Agrippa could have demanded that all defaults, including those by the guarantor, would be limited to the Agrippa loan. But it did not. Speculation on contract language which does not exist is futile.

Accordingly, the Preliminary Injunction is DENIED. Submit Order on 5 days Notice.

Dated: New York, New York
January 11, 2011

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge